IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| LEONIDA BREWER,<br><br>    Plaintiff,<br><br>vs.<br><br>CORNERSTONE NUTRITIONAL LABS, L.L.C., a limited liability corporation, CORNERSTONE RESEARCH & DEVELOPMENT, INCORPORATED, a Delaware corporation, BARBARA SEDGWICK, an individual, and JESUS HERNANDEZ NOLAZCO, an individual,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br><br><br><br><br>Case No. 1:05-CV-146 TS |

This is a Title VII case arising from Plaintiff Leonida Brewer's employment with Defendant Cornerstone Nutritional Labs, L.L.C., and its successor entity, Defendant Cornerstone Research & Development, Inc. (collectively, "Cornerstone"). Also named as Defendants are Cornerstone employees Jesus Nolazco and Barbara Sedgwick. In her complaint, Plaintiff alleges the following causes of action: (1) Title VII hostile work environment; (2) Title VII retaliation; (3) negligent supervision and retention; (4) assault (Defendant Nolazco only); and (5) intentional infliction of emotional distress (Defendant Nolazco and Defendant Sedgwick only).

1

Before the Court is Defendants' Motion for Summary Judgment,[1] asking the Court to grant them judgment as a matter of law on each of Plaintiff's claims, excepting the claims against Defendant Nolazco.[2] The Court heard oral argument on January 17, 2008, and took the matter under advisement. After careful consideration, the Court will grant in part and deny in part Defendants' Motion for Summary Judgment as set forth below.

## I.  STANDARD OF REVIEW

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[3] In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[4] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[5]

## II.  FACTS

Cornerstone is a manufacturer of nutritional supplements. Plaintiff began her employ with Cornerstone in October of 1997. As a "weigher" in the weigh room, Plaintiff was charged

---

[1] Docket No. 52.

[2] In the January 17, 2008 hearing, Defendants' counsel expressly represented to the Court that Defendants do not seek summary judgment with respect to any of the claims against Defendant Nolazco.

[3] *See* Fed. R. Civ. P. 56(c).

[4] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[5] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

with ensuring that raw ingredients were properly weighed prior to their inclusion in Cornerstone's products.

Plaintiff claims that in early 2003 Defendant Nolazco began sexually harassing her by touching her inappropriately and by saying the words "sexy," "nice body," and "smells good."[6] According to Plaintiff, this harassment continued until January 19, 2005.[7] Plaintiff testified at her deposition that during 2004 she complained to Defendant Sedgwick "[m]ore than ten times" regarding Defendant Nolazco's conduct.[8] Defendant Sedgwick denies this claim. Plaintiff also alleges that Defendant Sedgwick "allowe[d] male employees to grope her in the presence of female employees and [used] sexually charged language in [Plaintiff's] presence."[9]

During the relevant time period, Cornerstone had a policy against sexual harassment that provided three avenues for reporting improper behavior—the human resource department, the vice president of operations, or the complaining employee's direct supervisor. In her deposition, Plaintiff testified that she was aware of these reporting options and that if she was not satisfied with the response from one option, she could report misconduct through the other options.[10]

During the swing shift on the evening of January 19, 2005, Plaintiff alleges that Defendant Nolazco groped her breast while working in the blending office at Cornerstone and that she responded by punching him in the chest and exiting the office. Defendant Nolazco, who

---

[6]Defs.' Mem. Supp. ¶¶ 51-52 (Docket No. 53); Brewer Decl. ¶ 15 (Docket No. 56 Ex. 1).

[7]Brewer Decl. ¶ 15 (Docket No. 56 Ex. 1).

[8]Brewer Depo. 160:3 (Docket No. 61 Ex. A).

[9]Third Am. Compl. ¶ 70 (Docket No. 39).

[10]Brewer Depo. 258:25-259:24 (Docket No. 61 Ex. A).

normally worked the day shift, was temporarily assigned to the swing shift to fill in for an employee who was on vacation.  Plaintiff reported the incident to Alan Myers (quality assurance supervisor) who then informed Defendant Sedgwick (supervisor over the blending and weighing areas) and Rick Williams (human resource director).  Defendant Sedgwick and Mr. Williams were not at the facility at the time, but arrived shortly thereafter and investigated the incident.  Plaintiff was allowed to go home without completing her shift, but with pay.  After investigating the matter, Cornerstone suspended Defendant Nolazco for three days, gave him a written warning, suspended his annual review, placed him on three-month probation, and required him to undergo further sexual harassment training on an individual basis.  Cornerstone also instructed Defendant Nolazco to return to the day shift after his suspension and to leave fifteen minutes early each day, and for Plaintiff to arrive fifteen minutes late, to avoid any further contact.

     Plaintiff also reported the January 19 incident to the Farmington Police Department.  Defendant Nolazco pleaded "no contest" to the crime of assault after the Davis County Attorney filed an information charging him with sexual battery.  Plaintiff does not allege any further misconduct on the part of Defendant Nolazco after the January 19 incident.

     Plaintiff claims that in early February of 2005, shortly after the January 19 incident, Defendant Sedgwick instructed Jenny Bell (Plaintiff's co-worker), while in Plaintiff's presence, to check Plaintiff's work every hour.  Plaintiff claims that this assignment was made in retaliation for her complaint regarding the January 19 incident.  Defendants contend that any additional scrutiny of Plaintiff's work was due to a company-wide increase in quality control in an attempt to meet a stringent pharmaceutical manufacturing standard.

     On April 11, 2005, Plaintiff's annual review, upon which her annual pay raise was conditioned, was suspended indefinitely.  Defendants attribute this to Plaintiff's alleged failure to

meaningfully assess herself on the self-assessment form completed by Plaintiff as part of the annual review.  Plaintiff claims that this explanation is merely pretext for retaliation against her prompted by her affixing the following on the self-assessment form: "Prompt attention by upper management should be addressed.  When incidents of bad conduct between workers occurs. [T]his was before get some attention.  I don't see now."[11]  Plaintiff claims that she was forced by Defendant Sedgwick, Lance Parker (team leader), and Mr. Williams to add the following at the end of the above comments: "I notice that there a lot of changes. [N]ow problem is fixed."[12]  Plaintiff claims that she was never informed of any problem (other than her comments about management) with her self-assessment.[13]

On May 13, 2005, Plaintiff was suspended allegedly because of a weighing mistake made on a batch of supplement called "Forward 2001."  Defendant Sedgwick contends that the batch was significantly overweight and attributed this mistake to Plaintiff because the excess[14] of zinc ingredient (for which Plaintiff was responsible) came in underweight.  Plaintiff contends that this explanation is pretext for retaliation because it was mathematically impossible for Plaintiff to have made the weighing error of which she was accused as there was not enough of the zinc ingredient in the weigh room to account for the overage in the batch.

---

[11] *See* Docket No. 56 Ex. 9.

[12] Brewer Decl. ¶ 23 (Docket No. 56 Ex. 1); Docket No. 56 Ex. 9.

[13] Brewer Decl. ¶¶ 23, 25 (Docket No. 56 Ex. 1).

[14] "Excess" refers to the portion of an ingredient that is not used in the mixing of a batch.

On June 8, 2005, Plaintiff filed a charge of discrimination with the Utah Antidiscrimination and Labor Division ("UALD") and the Equal Employment Opportunity Commission ("EEOC") claiming both sex discrimination and retaliation.

On July 18, 2005, Plaintiff was terminated allegedly because of a second weighing mistake made on a batch of supplement called "Zantrex."  This mistake—which caused the batch to come in underweight—was attributed to Plaintiff when a discrepancy was discovered in her paperwork for the raw ingredients in the batch.  Plaintiff again contends that the weighing mistake was erroneously attributed to her and that Defendants' explanation is merely pretext for retaliation, asserting that the discrepancy—even assuming its validity—was not large enough to account for the amount by which the batch was underweight.

### III.  TITLE VII HOSTILE WORK ENVIRONMENT

Defendants seek summary judgment on Plaintiff's hostile work environment claim based on the affirmative defense outlined in *Burlington Industries, Inc. v. Ellerth*[15] and *Faragher v. City of Boca Raton*.[16]  This affirmative defense allows an employer to avoid vicarious liability[17] for the actions of its employee supervisor if: "(1) [the employer] 'exercised reasonable care to prevent and correct promptly any sexually harassing behavior,' *and* (2) 'the plaintiff employee

---

[15]524 U.S. 742 (1998).

[16]524 U.S. 775 (1998).

[17]In her complaint, Plaintiff also asserts that Cornerstone is liable for hostile work environment under a negligence theory.  Third Am. Compl. ¶¶ 69-75 (Docket No. 39).  However, Plaintiff has not pointed to any evidence in the record capable of supporting a finding that the alleged harassment was so pervasive that Cornerstone "knew or should have known about the conduct and failed to stop it."  *See Burlington*, 524 U.S. at 760.

unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise.'"[18]

Notably, the *Burlington/Faragher* defense is available only where the actions of the supervisor have not "'culminate[d] in a tangible employment action' against [the] employee."[19] However, Plaintiff does not dispute Defendants' assertion that the alleged sexual harassment did not result in a tangible employment action in this case.  Accordingly, the Court's discussion is limited to analysis of the two-pronged test above.

*A.  Employer's Reasonable Care to Prevent and Correct*

Analysis regarding whether an employer has taken reasonable care to prevent and correct sexual harassment generally focuses on the employer's "promulga[tion] [of] an antiharassment policy with complaint procedure"[20] and the employer's response to complaints made thereunder.[21]

Cornerstone argues that it adequately disseminated and conducted training on its sexual harassment policy—which allowed for reporting of sexual harassment to the employee's direct supervisor, the human resource department, or the vice-president of operations.  It also asserts that Defendant Sedgwick and Mr. Williams properly investigated the January 19 incident with Defendant Nolazco and took needed remedial action by suspending him, giving him a written

---

[18]*Curran v. AMI Fireplace Co.*, 163 Fed. Appx. 714, 719 (10th Cir. 2006) (quoting *Burlington*, 524 U.S. at 765) (unpublished decision).

[19]*Id.* (quoting *Burlington*, 524 U.S. at 765).

[20]*Burlington*, 524 U.S. at 765.

[21]*See, e.g.*, *Curran*, 163 Fed. Appx. at 722 (focusing on the defendant's failure to "take prompt and adequate steps to remedy" ongoing sexual harassment).

warning, requiring him to receive further sexual harassment training, suspending his annual review, placing him on three-month probation, and arranging for him to leave work fifteen minutes early each day, and for Plaintiff to arrive at work fifteen minutes late each day, so as to prevent further contact between them.

Plaintiff does not take issue with the substance of Cornerstone's harassment policy or the handling of the January 19 incident. Rather, Plaintiff contends that Cornerstone did not take reasonable care to prevent harassment because it did not disseminate its policy in Spanish, despite its employment of persons whose native language is Spanish, including Mr. Nolazco—who admittedly understands only about 20% of written English.

Although a failure to disseminate the policy in a form understandable by Cornerstone's employees would likely indicate a failure to take reasonable measures to prevent sexual harassment, Plaintiff has not brought forth any evidence establishing that Cornerstone employees could not understand the policy. Plaintiff states only that "Cornerstone employs individuals who speak Spanish as their first language."[22] However, Plaintiff has not introduced any evidence that these employees (other than Defendant Nolazco) are not capable of understanding English. Simply because Spanish is their first language does not mean that they do not understand English. With regard to Defendant Nolazco, Plaintiff relies entirely on his estimate that he understands only 20% of written English to infer that he must have understood only 20% of Cornerstone's policy. However, Plaintiff does not dispute that at his hiring Defendant Nolazco received training on Cornerstone's sexual harassment policy and satisfactorily answered

---

[22] Pl.'s Mem. Opp. at 16 (Docket No. 56).

questions on an assessment about sexual harassment.[23]  In sum, although Plaintiff's theory has merit in the abstract, the Court finds that no reasonable jury could conclude based on the evidence in the record that a possible language barrier prevented Cornerstone employees from understanding the sexual harassment policy and training such that Cornerstone was obligated to disseminate its policy in Spanish.  A finding to the contrary would require employers to translate their policies into as many languages as their employees speak, even where those employees also speak and understand English.

Plaintiff also claims that Cornerstone failed to correct the harassment allegedly experienced by Plaintiff on an ongoing basis during 2004, despite some ten reports made to Defendant Sedgwick.  However, as discussed below, Plaintiff unreasonably failed to make use of the alternative complaint channels provided in Cornerstone's policy when it became clear that Defendant Sedgwick did not intend to take remedial action.  In short, Cornerstone cannot be expected to correct an ongoing hostile work environment of which it was not aware.  Thus, the Court finds that Cornerstone satisfies the first prong of the *Burlington/Faragher* defense.

*B. Employee's Failure to Reasonably Take Preventative or Corrective Opportunities*

Plaintiff argues that she took advantage of Cornerstone's policy by making some ten complaints to Defendant Sedgwick in 2004, who Plaintiff claims was her supervisor at the time.  Defendants contend that even if Defendant Sedgwick was Plaintiff's supervisor, Plaintiff unreasonably failed to complain to either the human resource department or the vice president of operations when it became clear that Defendant Sedgwick would not take remedial action.

---

[23] Defs.' Mem. Supp. ¶¶ 29-30 (Docket No. 53); Docket No. 53 Ex. K.

The second prong of the *Burlington/Faragher* defense is based on the duty of a victimized employee to avoid or mitigate harm.[24] In keeping with this principle, the Fifth Circuit has held that where an employer's sexual harassment policy provides for multiple reporting outlets, an employee victim does not reasonably take advantage of preventative or corrective opportunities provided in the employer's policy by electing to report sexual harassment only to her supervisor, despite the supervisor's unwillingness or inability to remedy the problem and his direct participation in the harassment.[25]

Regardless of whether Defendant Sedgwick was Plaintiff's supervisor during the relevant period, Plaintiff did not reasonably take advantage of Cornerstone's policy by choosing to report the alleged harassment to Defendant Sedgwick alone. In her complaint, Plaintiff alleges that Defendant Sedgwick "contributed to the hostile work environment by allowing male employees to grope her in the presence of female employees and by using sexually charged language in [Plaintiff's] presence."[26] Yet, Plaintiff elected to complain only to Defendant Sedgwick, despite her awareness of the option to report violations of Cornerstone's policy to her direct supervisor, to the human resource department, or to the vice president of operations. Assuming that Plaintiff's allegations regarding Defendant Sedgwick's conduct are true, a reasonable employee in Plaintiff's situation would have recognized that Defendant Sedgwick did not intend to remedy the situation and that further complaints to the human resource department or the vice president of operations were necessary to obtain redress. Accordingly, the Court finds that Plaintiff

---

[24]*Faragher*, 524 U.S. at 806-07.

[25]*Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 413 (5th Cir. 2002).

[26]Third Am. Compl. ¶ 70 (Docket No. 39).

unreasonably failed to take advantage of Cornerstone's sexual harassment policy when she did not take her complaints to either the human resource department or the vice president of operations. Thus, having satisfied both prongs of the *Burlington/Faragher* defense, Cornerstone is entitled to summary judgment on Plaintiff's hostile work environment claim.

## IV. TITLE VII RETALIATION

Summary judgment on a Title VII retaliation claim is evaluated under the *McDonnell Douglas*[27] burden-shifting framework.[28] First, Plaintiff must establish a prima facie case for retaliation.[29] If the Plaintiff is able to show a prima facie case, Defendants must then "articulate a legitimate, non discriminatory reason" for taking the adverse employment action.[30] To avoid summary judgment, Plaintiff must then bring forth enough evidence to show that a factfinder might reasonably conclude that the "proffered explanation is a pretext for retaliation."[31]

### A. Prima Facie Case

First, Plaintiff must establish a prima facie case for retaliation, which has three elements: (1) protected opposition; (2) material adverse employment action; and (3) a causal connection between the protected opposition and the material adverse employment action.[32]

---

[27] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[28] *Argo v. Blue Cross and Blue Shield, Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006).

[29] *Id.*

[30] *Id.*

[31] *Id.* at 1203.

[32] *Id.* at 1202.

1.  Protected Opposition

In this case, it is undisputed that Plaintiff engaged in protected opposition on three occasions: (1) January 19, 2005—Plaintiff complains to Defendant Sedgwick and Mr. Williams about the January 19 incident; (2) January 25, 2005—Plaintiff reports the January 19 incident to the Farmington Police Department;[33] and (3) June 8, 2005—Plaintiff files the UALD Complaint.

2.  Material Adverse Employment Action

The Parties agree that at least two material adverse employment actions took place: (1) May 13, 2005—Plaintiff is suspended for the alleged May 2005 weighing error; and (2) July 18, 2005—Plaintiff is terminated for the alleged July 2005 weighing error.  Plaintiff argues that the alleged increased scrutiny of her work in early February 2005 and the suspension of her annual review and the resulting denial of her annual pay raise on April 11, 2005, also constitute material adverse employment action.

Title VII protects employees "not from all retaliation, but from retaliation that produces injury or harm."[34]  Thus, an alleged adverse employment action must be material in order to make out a prima facie case for retaliation.  An employment action is material where it would "dissuade[] a reasonable worker from making or supporting a charge of discrimination."[35]

The Court finds that the pay raise denial is a material adverse employment action.  The suspension of Plaintiff's annual review, which clearly resulted in the denial of Plaintiff's pay

---

[33] Docket No. 56 Ex. 10.

[34] *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2414-15 (2006).

[35] *Id.* at 2415 (quoting *Rachon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)) (internal quotation marks omitted).

increase, is employment action that caused real harm to Plaintiff. This action would dissuade a reasonable worker from pursuing a discrimination complaint.

Whether increased scrutiny constitutes material adverse employment action is a closer question. Although courts have come down on both sides of the issue,[36] the majority of authority has held that it is not.[37] For example, a Seventh Circuit panel held that "intimidating comments, dirty looks, and increased scrutiny . . . do not constitute adverse actions by [an] employer."[38]

However, at least one court has found that "extreme supervision" is material adverse employment action such that it could support a prima facie case for retaliation.[39] In *Ortez v. Washington County*, the Ninth Circuit held that singling out an employee for constant "extreme supervision" by "order[ing] another employee to follow him and otherwise confirm his whereabouts during the day" was material adverse employment action.[40]

Even viewing the facts in the light most favorable to her, the record does not show that Plaintiff was singled-out and subjected to the type of increased scrutiny that might qualify as material adverse employment action. According to Plaintiff, Cornerstone, through Defendant Sedgwick, ordered Jenny Bell to check Plaintiff's work documentation hourly. However, Plaintiff has offered no evidence that the increased scrutiny of her work was in any way different

---

[36] *Compare Ortez v. Washington County*, 88 F.3d 804, 809 (9th Cir. 1996) *with Harris v. Milwaukee*, 97 Fed. Appx. 662, 665 (7th Cir. 2004) (unpublished decision).

[37] *See Carrero v. Robinson*, 2007 WL 1655350, at *11 (D. Colo. Jun. 5, 2007) (collecting authority for the proposition that "increased supervision or monitoring" is not material adverse employment action).

[38] *Harris*, 97 Fed. Appx. at 665.

[39] *See Ortez*, 88 F.3d at 809 & n.9.

[40] *Id.*

13

than the increased checking of the work of all employees pursuant to Cornerstone's attempt to become certified for production of pharmaceutical products in January of 2005.[41]  Plaintiff claims only summarily that Ms. Bell was not subjected to the same scrutiny.  Plaintiff offers no foundation for this claim other than her view that Plaintiff and Ms. Bell were "close to each other."[42]  This summary testimony is not enough to establish the type of extreme supervision that could qualify as material adverse employment action.  Accordingly, the Court finds that Plaintiff has not established a prima facie case for retaliation based on the alleged increased scrutiny and will therefore grant Defendants' Motion for Summary Judgment with respect thereto.

       3.  Causal Connection

Plaintiff claims that causation is established in this case both because of close temporal proximity between her protected opposition and the adverse employment actions as well as by evidence of pretext.

A causal connection between protected activity and adverse employment action may be established by temporal proximity alone only where the events are "very closely connected in time."[43]  The precise period of time that would support an inference of causation has not been definitively decided.  Three months is clearly too long to establish causation.[44]  However, a one

---

[41] *See* Bell Decl. ¶ 13 (Docket No. 63).

[42] Brewer Depo. 246:23-24 (Docket No. 61 Ex. A).

[43] *Piercy v. Maketa*, 480 F.3d 1192, 1198 (10th Cir. 2007) (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)) (internal quotation marks omitted).

[44] *Anderson*, 181 F.3d at 1179.

and one-half month period satisfies the requirement.[45] Between these boundaries, the Tenth Circuit has offered mixed guidance.[46]

Where temporal proximity is not close enough to establish causation of itself, "the plaintiff must offer additional evidence to establish causation."[47] The Tenth Circuit allows the use of evidence of pretext as "additional evidence" to meet the causation burden.[48]

In this case, Plaintiff engaged in protected opposition on three occasions: (1) reporting the January 19 incident to Defendant Sedgwick and Mr. Williams on January 19, 2005; (2) reporting the January 19 incident to the Farmington Police on January 25, 2005;[49] and (3) filing a complaint with the UALD on June 8, 2005. Each of the adverse employment actions are considered with respect to these dates.

The causation requirement is clearly satisfied with regard to the July 2005 termination as Plaintiff was terminated on July 18, 2005, less than six weeks after her filing of the June 2005 UALD complaint. However, neither the April 2005 pay raise denial nor the May 2005

---

[45]*Id.*

[46]*See Webb v. Level 3 Commc'ns, LLC,* 167 Fed. Appx. 725, 734 (10th Cir. 2006) (collecting Tenth Circuit cases) (unpublished decision).

[47]*Procter v. United Parcel Service*, 502 F.3d 1200, 1209 (10th Cir. 2007) (quoting *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1228 (10th Cir. 2006)) (internal quotation marks omitted).

[48]*See id.*

[49]Plaintiff attempts to use March 2, 2005 as the date for the protected activity associated with the police report, claiming that Defendant Sedgwick and Mr. Williams "learned that the assault had been reported to the police on *or before* March 2, 2005." Pl.'s Mem. Opp. at 6 (Docket No. 56) (emphasis added). However, Plaintiff has done nothing to show that Defendant Sedgwick and Mr. Williams did not know of the police report prior to March 2. Accordingly, the Court does not consider the March 2, 2005 date.

suspension are close enough in time to Plaintiff's January 2005 protected opposition to establish causation based on temporal proximity alone. Nonetheless, the Court finds that Plaintiff's evidence of pretext is enough to establish causation with respect to these employment actions. Thus, Plaintiff has met her burden to establish a prima facie case for retaliation with respect to the April 2005 pay raise denial, the May 2005 suspension, and the July 2005 termination.

*B. Proffered Nondiscriminatory Reasons and Pretext*

Although Cornerstone has provided nondiscriminatory reasons for each of the material adverse employment actions, the Court finds that Plaintiff has brought forth evidence that would allow a factfinder to reasonably conclude that the proffered reasons were merely pretext for retaliation. Accordingly the Court will deny Defendants' Motion for Summary Judgment on Plaintiff's Title VII retaliation claim with respect to the following employment actions: (1) suspension of Plaintiff's annual review, resulting in the denial of Plaintiff's annual pay raise in April 2005; (2) suspension of Plaintiff's employment in May 2005; and (3) termination of Plaintiff's employment in July 2005.

## V.  STATE LAW CLAIMS

Defendants also seek summary judgment on Plaintiff's negligent supervision and retention claim against Cornerstone and Plaintiff's intentional infliction of emotional distress (IIED) claim against Defendant Sedgwick, claiming that these causes of action are barred by the Utah Workers' Compensation Act.[50]

"[T]he key to whether the [Workers'] Compensation Act precludes a common law right of action lies in the nature of the injury for which plaintiff makes claim, not the nature of . . .

---

[50]Utah Code Ann. § 34A-2-101 *et seq.*

defendant's act which plaintiff alleges to have been responsible for that injury."[51] The Supreme Court of Utah has recognized that the provisions of the Workers' Compensation Act compensate an employee for "physical or mental injury," and therefore preclude a common law action against an employer seeking recovery for such.[52] However, a common law action to recover for physical or mental injury may proceed against a co-employee who "manifested a deliberate intent to injure"[53] the plaintiff employee.[54]

### A.  Negligent Supervision and Retention

Plaintiff's negligent supervision and retention claim against Cornerstone is clearly precluded by the Utah Workers' Compensation Act as Plaintiff has acknowledged that she is seeking "mental stress damages"[55] on a claim based in negligence.

### B.  Intentional Infliction of Emotional Distress

Defendant Sedgewick is entitled to summary judgment on Plaintiff's IIED claim both because the alleged conduct is not sufficiently outrageous and intolerable to sustain an action for IIED and because Plaintiff's IIED claim is barred by the Workers' Compensation Act.

To recover on a claim of intentional infliction of emotional distress a plaintiff must prove that: "(1) the defendant's conduct complained of was outrageous and intolerable in that it

---

[51] *Mounteer v. Utah Power & Light Co.*, 823 P.2d 1055, 1057 (Utah 1991) (quoting *Gambrell v. Kansas City Chiefs Football Club*, 562 S.W.2d 163, 168 (Mo. Ct. App. 1978)).

[52] *Id.*; *see also Matthews v. Kennecott Utah Copper Corp.*, 54 F. Supp. 2d 1067, 1076 (D. Utah 1999) (finding that Workers' Compensation Act barred negligent supervision claim for physical and mental injuries).

[53] *Lantz v. Nat'l Semiconductor Corp.*, 775 P.2d 937, 940 (Utah Ct. App. 1989).

[54] *Mounteer*, 823 P.2d at 1056 (citing *Bryan v. Utah Int'l*, 533 P.2d 892 (Utah 1975)).

[55] Pl.'s Mem. Supp. at 18 (Docket No. 56).

offended . . . generally accepted standards of decency and morality; (2) the defendant intended to cause, or acted in reckless disregard of the likelihood of causing, emotional distress; (3) the plaintiff suffered severe emotional distress; and (4) the defendant's conduct proximately caused the emotional distress."[56] A court may determine as a matter of law that "a defendant's conduct was not outrageous" thereby entitling the defendant to summary judgment.[57] "Outrageous conduct, for purposes of the tort of intentional infliction of emotional distress, is conduct that evokes outrage or revulsion; it must be more than unreasonable, unkind, or unfair."[58] "[C]onduct is not outrageous simply because it is tortious, injurious, or malicious, or because it would give rise to punitive damages, or because it is illegal."[59]

In her Complaint, Plaintiff alleges that Defendant Sedgwick "repeatedly screamed at [Plaintiff], bumped into her physically in an effort to cause [Plaintiff] severe emotional distress to the extent that she would leave her employment." Plaintiff also alleges that Defendant Sedgwick "eagerly participated in the sexual play and allowed male employees to grope her in the presence of other employees in a salacious and outlandish manner."[60]

Although this conduct is distasteful and is fairly characterized as unkind and even tortious, it does not evoke "outrage or revulsion." Thus, it does not rise to the level of outrageous or intolerable conduct as required to recover for IIED. Moreover, Plaintiff has not

---

[56] *Halverson v. Univ. of Utah Sch. of Med.*, 2007 WL 2892633, at *19 (D. Utah Sep. 28, 2007); *see also Prince v. Bear River Mut. Ins. Co.*, 56 P.3d 524, 535 (Utah 2002).

[57] *Prince*, 56 P.3d at 536.

[58] *Id.* (internal quotation marks omitted).

[59] *Id.* (internal quotation marks omitted).

[60] Third Am. Compl. ¶ 88(b)-(c) (Docket No. 39).

presented evidence that Defendant Sedgwick intended to deliberately injure her as required to survive the Workers' Compensation bar on common law suits.  Thus, the Court will grant Defendants' Motion for Summary Judgment with respect to Plaintiff's IIED claim against Defendant Sedgwick.

## VI.  CONCLUSION

It is hereby

ORDERED that Defendants' Motion for Summary Judgment [Docket No. 52] is GRANTED IN PART AND DENIED IN PART as outlined above.

DATED January 25, 2008.

BY THE COURT:

_____
TED STEWART
United States District Judge